UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARMEL I.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C23-5567-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1969, has a college degree, and has worked as an adjustment clerk, photograph printer operator, bakery helper, and child care worker.  *See* AR 22-23, 394, 1821. Plaintiff was last gainfully employed in or around 2008.  *See* AR 22, 382, 1821.

Plaintiff applied for DIB in October 2015, with an alleged onset date of February 1, 2012 and a date last insured (DLI) of March 31, 2016.  *See* AR 15, 1808.  Plaintiff's application was denied and she requested a hearing.  *See* AR 15.  The ALJ conducted a hearing on January 8,

2019, AR 255-305, and issued a decision finding Plaintiff not disabled on June 19, 2019, AR 15-23.

The Appeals Council denied Plaintiff's request for review, AR 1-5, making the ALJ's decision the Commissioner's final decision.  Plaintiff appealed to this Court.  On March 30, 2021, the Court reversed the decision and remanded the claim for a new hearing.  Dkt. 1894-99.

An ALJ held a new hearing on October 27, 2022.  AR 1831-63.  On December 7, 2022, the ALJ issued a decision finding Plaintiff not disabled.  AR 1808-23.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2012 through her March 31, 2016 DLI.

**Step two**:  Plaintiff has the following severe impairments:  fibromyalgia and obesity.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity**:  Plaintiff could, through the DLI, perform the full range of medium work.

**Step four**:  Plaintiff could perform past relevant work and other jobs that exist in significant numbers in the national economy.

**Step five**:  As Plaintiff could perform past relevant work and other jobs that exist in significant numbers in the national economy, Plaintiff was not disabled from the alleged onset date through the DLI.

AR 1808-23.

The Appeals Council denied Plaintiff's request for review, AR 1797-1800, making the ALJ's decision the Commissioner's final decision.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred in evaluating her mental impairments at step two, in evaluating medical opinion and other medical evidence, and in evaluating her testimony and lay

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 3

witness statements.[3]  The Commissioner argues the ALJ's decision is free of harmful legal error,

supported by substantial evidence, and should be affirmed.

###    A.    The ALJ Did Not Err at Step Two

Plaintiff asserts error in the finding that she had no severe mental impairments prior to

her March 31, 2016 DLI.  She points, in support, to the overall evidence in the record, including

treatment received from her primary care provider after the alleged onset date, her inpatient

psychiatric hospitalization just four weeks after the DLI, and her second hospitalization some

four months later, as well as to the testimony of medical expert David Peterson, Ph.D.

###        1.    *Applicable standards*

At step two, claimants must make a threshold showing that their medically determinable

impairments significantly limit their ability to perform basic work activities.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 145 (1987); 2 0 C.F.R. § 404.1520(c).  "Basic work activities" refers to

"the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b).  "An

impairment or combination of impairments can be found 'not severe' only if the evidence

establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability

to work."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoted source omitted).  A

diagnosis alone is not sufficient to establish a severe impairment.  Instead, claimants must show

that their medically determinable impairments are severe.  20 C.F.R. § 404.1521.

In order to be eligible for DIB, a claimant must show she was disabled while she was

insured (on or before her DLI).  *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131.  Medical

opinions that post-date the DLI may be relevant to determining whether a claimant was disabled

---

[3] While Plaintiff also contends these errors led to errors in the residual functional capacity assessment and findings at steps four and five, these derivative allegations need not be separately addressed.

before the DLI and cannot be disregarded solely because they post-date the DLI. *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988). However, post-DLI opinions may be discounted where they do not have retrospective applicability or are inconsistent with the medical evidence dating to the adjudicated period. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

2.      *ALJ's Step Two Analysis*

At step two, the ALJ noted his consideration of evidence "post-DLI which shows the occurrence of suicidal ideation, intent and plan and involuntary hospitalization in April 2016, twenty-seven days after the [DLI], with a subsequent hospitalization in September 2016," and found that it showed an acute worsening of Plaintiff's condition and was not indicative of her condition prior to the DLI. AR 1811-12. The ALJ concluded that Plaintiff's medically determinable mental impairments of anxiety, depression, and post-traumatic stress disorder (PTSD), considered alone and in combination, did not cause more than minimal limitation in her ability to perform basic work activities and were therefore non-severe prior to the DLI. AR 1811-15. The ALJ also found that the opinions of Dr. Peterson as to Plaintiff's mental impairments lacked support and were inconsistent with the evidence in the record. AR 1813. The Court, as discussed below, finds the ALJ's conclusions supported by substantial evidence.

As acknowledged by the ALJ, the record includes evidence of medically determinable mental impairments prior to the DLI. Specifically, on February 12, 2012, shortly after the February 1, 2012 alleged onset date, Plaintiff saw Dr. Susie Pae to establish primary care and to discuss depression and anxiety. AR 1605. She reported a diagnosis of depression four years earlier, described as "mood swings, irritability, feeling sad, crying, sleeps for long hours, no desire to knit" and associated symptoms including an abusive marriage, that she had stopped

mental health medication some eight months earlier because she did not think it was helping, and that she had remarried and was in a stable relationship.  AR 1610.  She reported current symptoms including fatigue, malaise, and depression, and Dr. Pae assessed depression, poorly controlled, with no suicidal or homicidal ideation, prescribed Cymbalta, and directed a follow-up appointment in a month to reassess.  AR 1612.  Plaintiff reported her depression was "better controlled" in the March 20, 2012 follow-up.  AR 1627-28.  On April 25, 2012, Plaintiff reported worsening symptoms of depression over the two prior weeks, stated she had "no desire to leave the house", and that the Cymbalta was not working as well as it had originally, leading Dr. Pae to increase the dosage.  AR 1634-35.

Thereafter, in the four years between the April 2012 appointment with Dr. Pae and the March 2016 DLI, the record contains only a single instance, on March 6, 2013, in which Plaintiff reported symptoms of depression and anxiety.  AR 1670.  Otherwise, during those four years, Plaintiff did not report any symptoms of depression or anxiety and/or denied depression, anxiety, or any other psychiatric complaints, and her depression was described as stable and well controlled.  *See* AR 1640-42 (August 22, 2012); AR 1657 (November 5, 2012); AR 1681 (March 7, 2013); AR 1719 (September 26, 2013); AR 1735, 1737 (January 27, 2014); AR 1779 (February 18, 2015)).  Plaintiff was also, throughout that same time period, observed to have normal mental status during health care appointments, *see, e.g.*, AR 1621, 1642, 1648, 1657, 1671, 1681, 1697, 1718, 1736, 1763, 1771, 1780, and, in a December 28, 2015 consultation for her physical impairments, had a normal mental status examination and denied suicidal ideation, AR 489.  On January 6, 2016, a State agency medical consultant opined that Plaintiff did not have any medically determinable mental impairments.  AR 306-09.

1    In April 2016, a month after the DLI, evidence of Plaintiff's mental health impairments

2    appear in the record.  Specifically, in an April 26, 2016 dermatology appointment, Plaintiff told

3    David Kasper, D.O., that she had cut "herself with keys on Saturday due to issues at home and

4    abusive husband," wished to overdose, and planned to kill herself, leading Dr. Kasper to initiate

5    an involuntary "'302' procedure to prevent imminent harm[.]"  AR 889, 897-98, 1478-80.  The

6    psychiatric hospitalization records show Plaintiff reported "a history of self-injury, with one

7    episode reportedly ten years prior" and appeared with moderate mood, sad affect, poor judgment

8    and impulse control, fair concentration/attention span, and lacking insight.  AR 1478.  Plaintiff

9    acknowledged that the conflict with her husband resulted in the self-injury and that "conflict over

10   anger toward [her] present husband resulted from significant history of trauma and abuse from

11   [her] first husband[.]"  AR 1479.  On her May 2, 2016 discharge, she was diagnosed with major

12   depressive order, single episode, and chronic PTSD, with her condition deemed improved and

13   her prognosis fair.  AR 1479-80.

14   Four months later, in September 2016, Plaintiff again received in-patient psychiatric

15   treatment after a dermatological-related appointment in which she had a conflict with her

16   husband over the phone, expressed suicidal ideation, and reported he was physically and

17   emotionally abusive.  AR 913.  She was restarted on Cymbalta on admission, with an increased

18   dose given her report of worsening symptoms, was observed to improve significantly, and was

19   deemed stable on discharge, with diagnoses of major depression, recurrent, and generalized

20   anxiety disorder.  AR 914.  Medical records subsequent to this hospitalization show her

21   engagement in mental health treatment.  *See, e.g.*, AR 1456-77, 2666, 2673, 2695.

22   At hearing, Dr. Peterson testified that, prior to the DLI, Plaintiff satisfied the "C" criteria

23   of Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.15 (trauma- and

1   stressor-related disorders) because the record showed ongoing depression, hospitalizations

2   treating self-mutilations, that it lasted for at least two years, treatment including highly

3   structured, in-patient care, and adjustment that appeared to be marginal.  AR 1840-41.[4]  He

4   pointed to Plaintiff's reporting at the April 2016 hospitalization as suggesting this degree of

5   impairment had been ongoing since 2006.  AR 1841.  When asked whether there was support in

6   the medical record prior to the DLI, Dr. Peterson pointed to an exhibit showing Plaintiff's

7   appearance for treatment with depression and the prescription of an anti-depressant in February

8   2012, describing it as "consistent with that historical overview", and stated there "weren't really

9   detailed treating notes from this particular agency so not a lot of helpful, objective evidence[.]"

10  AR 1842-43.  When asked to identify evidence of treatment in a highly structured setting prior to

11  the DLI, Dr. Peterson stated he "was interpreting the multiple hospitalizations and the ongoing

12  self-mutilation without amelioration[,]" but that it "could be argued that it wasn't constant."  AR

13  1843.  Finally, when asked whether he had an opinion as to the degree of functional limitation

14  prior to the DLI, Dr. Peterson anticipated markedly impacted persistence, poor adaptation, and

15  poor self-management, but that, "because of how the records were constructed, it was difficult to

16  find objective support."  *Id.*

17

18

---

19  [4] A claimant can meet or equal Listings 12.04 and 12.15 by satisfying each listing's "paragraph
    A", meaning the medical criteria that must be present, and either the "paragraph B" or "paragraph C"
20  criteria for each listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(a), 12.04, 12.15.  Paragraph C
    criteria are used to evaluate mental disorders that are "'serious and persistent.'"  *Id.*, 12.00(A)(2)(c),
21  (G)(1).  To satisfy the C criteria for Listings 12.04 and 12.15, there must be "medically documented
    history of the existence of the mental disorder . . . over a period of at least 2 years," and evidence showing
22  both:  (1) that the claimant relies, "on an ongoing basis," on medical treatment, therapy, psychosocial
    support, or a "highly structured setting" to diminish signs and symptoms of the mental disorder; and (2)
23  that the claimant, despite diminished symptoms and signs, has "achieved only marginal adjustment[,]"
    meaning "adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to
    adapt to changes in your environment or to demands that are not already part of your daily life."  *Id.*,
    12.00 (G)(2).

The ALJ, with one exception discussed below, accurately depicted the medical evidence associated with Plaintiff's mental impairments.  *See* AR 1812-13.  He observed that, while depression was included as a diagnosis after November 2012, there was no record of a worsening until after the DLI, and that PTSD was not diagnosed until April 2016.  *Id.*  The ALJ found the record to show an acute worsening as of the April 27, 2016 hospitalization, but that, prior to this incident and in the twelve months prior to the DLI, the evidence "lacked indication of manifestations or more than minimal mental health symptoms or limitations."  *Id.*  He added that no such issues were observed in the earlier, December 2015 and January 2016 appointments with Dr. Kasper, or in any other treatment records.  AR 1813.

The ALJ further found that Dr. Peterson's opinions lacked support and were inconsistent with the evidence.  *Id.*  First, the evidence of ongoing depression, hospitalizations, self-mutilation, highly structured inpatient care, and marginal adjustment all occurred in April 2016, after the DLI, the record prior to this incident showed stability of conditions, normal mental status signs, denial of suicidal ideation, and no observations of self-mutilation, AR 1813 (citing AR 489, 880-81, 892-93, 1605-1790), and Plaintiff testified that she had not cut herself before April 2016, *see* AR 1850.  Second, to the extent Plaintiff reported a different history in April 2016, her report was not consistent with the evidence from the insured period.  AR 1813.  Third, Plaintiff received medical care in the insured period, "indicating care was available, but it was focused on her physical condition, indicating her mental health conditions were not especially bothersome to the claimant or apparent to medical personnel."  *Id.*  Fourth, Dr. Peterson relied on an exhibit that included "almost exclusively after-visit summaries," *see* AR 1481-1597, and did not appear to have considered the actual treatment notes from the medical providers.  AR 1813.  Finally, Dr. Peterson acknowledged it was difficult to find objective support for his functional

1    limitation assessment, and that assessment was inconsistent with the normal findings on

2    examination close to and in the twelve months prior to the DLI.  *Id.*

3         The ALJ also considered Plaintiff's symptom testimony at step two.  AR 1814.  Her

4    testimony at the first hearing reflected primarily physical complaints, suggesting her mental

5    symptoms were not significant during that timeframe.  *Id.*  Her testimony at the second hearing,

6    that she had suicidal ideation, flashbacks, and a lot of anxiety during the insured period, was

7    inconsistent with the evidence, and those inconsistencies undermined the weight that could be

8    given to her testimony and the opinions of Dr. Peterson, who testified that much of his opinion

9    was based on Plaintiff's historical report.  *Id.*

10        The ALJ, as noted above, did inaccurately construe the medical record in one respect.

11   That is, in discussing the medical evidence and the opinion of Dr. Peterson, the ALJ found the

12   record to show Plaintiff had stopped mental health medication, "indicating she felt she did not

13   need to use them to control her symptoms."  AR 1812-13.  The record, in fact, shows that

14   Plaintiff stopped medication some eight months before her February 2012 appearance with

15   symptoms of depression and anxiety, AR 1610, but was then prescribed Cymbalta, and thereafter

16   quickly gained and sustained stability of her conditions with use of that medication, *see, e.g.*, AR

17   1640-42, 1657, 1681, 1719, 1735, 1737, 1779.  This error is, however, properly deemed harmless

18   because the evidence shows that, for a number of years prior to the DLI, any symptoms of

19   Plaintiff's mental health impairments were controlled with the use of medication.  *See*

20   *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment

21   successfully relieving symptoms can undermine a claim of disability.").

22        Nor does Plaintiff identify any reversible error at step two.  She provides a lengthy

23   description of the medical evidence and appears to base her assignment of error on the treatment

1   she received from Dr. Pae, the fact that she was hospitalized not long after her DLI, and Dr.

2   Peterson's assessment of functional limitations.  *See* Dkt. 14 at 3-6 & Dkt. 17 at 2-4.  However,

3   she does not identify any medical evidence from Dr. Pae or any other medical provider

4   supporting a contention that her mental health impairments significantly limited her ability to

5   perform basic work activities prior to the DLI, and the mere fact that she later suffered an acute

6   worsening does not support a finding of pre-DLI severity.  *Weetman v. Sullivan*, 877 F.2d 20, 22

7   (9th Cir. 1989) ("'Any deterioration in her condition subsequent to the period of eligibility is, of

8   course, irrelevant.'") (cleaned up and quoted source omitted).  Plaintiff also fails to show error in

9   relation to Dr. Peterson, who, amongst other issues, conceded an absence of objective support for

10  the limitations assessed.  The Court, for this reason and for the reasons stated above, finds no

11  error in the ALJ's decision at step two.

12          **B.      The ALJ Did Not Err in Assessing Medical Opinions and Evidence**

13          Because Plaintiff filed her application prior to March 27, 2017, the applicable regulations

14  provide for differentiating the weight afforded to the medical opinions of any treating,

15  examining, and non-examining doctors.  20 C.F.R. § 404.1527.  Generally, more weight is given

16  to the opinion of a treating doctor than to the opinion of a doctor who did not treat the claimant,

17  *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014), and the opinion of an examining

18  doctor is entitled to greater weight than the opinion of a non-examining doctor, *see Pitzer v.*

19  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

20          Plaintiff here argues the ALJ erred in assigning little weight to the opinion of medical

21  expert Dr. Peterson and in assigning significant weight to the opinion of consultative physical

22  examiner Pramod Digamber, M.D.  Plaintiff also argues that the ALJ erred in evaluating other

23  medical evidence in the record.  The Court will address these arguments in turn.

1

      *1.    Dr. David Peterson*

2         Dr. Peterson, a non-examining doctor, offered the above-described testimony regarding

3 Plaintiff's mental impairments at the October 2022 hearing.  The weight afforded the opinions of

4 non-examining sources "depend[s] on the degree to which they provide supporting explanations

5 for their medical opinions."  20 C.F.R. § 404.1527(c)(3).  The ALJ evaluates "the degree to

6 which these medical opinions consider all of the pertinent evidence in your claim, including

7 medical opinions of treating and other examining sources."  *Id*.  Other factors relevant to the

8 evaluation include consistency with the record as a whole, whether or not the opinion relates to a

9 source's area of specialization, and other factors tending to support or contradict the opinion,

10 such as "the amount of understanding of [social security] disability programs and their

11 evidentiary requirements . . . , and the extent to which a medical source is familiar with the other

12 information in [a claimant's] case record[.]"  20 C.F.R. § 404.152 (c)(4)-(6).  An ALJ may reject

13 the opinion of a non-examining doctor "by reference to specific evidence in the medical record."

14 *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

15         The ALJ gave the testimony and opinion of Dr. Peterson little weight.  AR 1820.  The

16 ALJ noted Dr. Peterson did not examine or treat Plaintiff and referred to his step-two discussion

17 finding the opinions lacked support in the treatment and examination record.  *Id*.  The ALJ

18 further stated that Dr. Peterson's opinions were inconsistent "with the signs observed in

19 treatment and examination, including normal psychiatric or psychological signs as well as lack of

20 signs of self-mutilation[,]" and that they relied on Plaintiff's assertions of history, which were

21 given little weight.  *Id*.

22         Plaintiff asserts that, in criticizing Dr. Peterson's reliance on Plaintiff's reporting of her

23 history, the ALJ improperly acted as his own medical expert, substituting lay opinion for the

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 12

opinion of Dr. Peterson.  Plaintiff also asserts that, contrary to the ALJ's contention, "Dr. Peterson based his opinion on his careful review of the entire record."  Dkt. 14 at 6.

Plaintiff's arguments are not persuasive.  The ALJ properly discounted Dr. Peterson's opinions based on the absence of support in and inconsistency with the medical evidence.  *See, e.g.*, *Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) (ALJ properly discounted treating physician's opinion that was inconsistent with the treatment record showing normal findings and evidence of improvement).  The ALJ properly considered the extent to which Dr. Peterson was familiar with the treatment record, pointing to his reliance on after-visit summaries and his apparent failure to consider the actual treatment notes.  Moreover, rather than substituting his lay opinion for the opinion of a physician, the ALJ reasonably discounted Dr. Peterson's reliance on Plaintiff's reporting of her history by pointing to specific, contradictory, or otherwise unsupportive medical evidence in the record.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject an opinion based "to a large extent" on discredited self-reports and not clinical evidence); *Sousa*, 143 F.3d at 1244 (non-examining doctor's opinion may be rejected "by reference to specific evidence in the medical record.")  The ALJ did not, for these reasons, err in assigning little weight to Dr. Peterson's opinions.[5]

### 2.     Dr. Pramod Digamber

Dr. Digamber conducted a consultative physical examination of Plaintiff in December 2015.  AR 487-97.  He found Plaintiff capable of lifting up to fifty pounds occasionally and up to

---

[5] The ALJ also considered the only other opinion addressing Plaintiff's mental impairments, provided by State agency medical consultant Melissa Diorio, Psy.D.  AR 1820.  Dr. Diorio found no medically determinable mental impairments, noting Plaintiff received treatment from her primary care provider, had no formal mental health treatment, and had activities of daily living not significantly limited by mental health factors.  *Id*.  The ALJ gave this opinion limited weight, stating that the record mentioned a diagnosis and history of depression "to some degree[,]" and finding that, while the impairments were medically determinable, they were not evidenced to have been severe, and that "no significant or formal treatment is consistent with the treatment record."  *Id*.

1    twenty pounds frequently, able to sit, stand, and walk at least six out of eight hours in a workday,

2    and with no limitations in the use of her hands, postural activities, or with respect to

3    environmental restrictions.  AR 490-95.

4         The ALJ observed that Dr. Digamber found Plaintiff capable of performing the full range

5    of medium-level work, with no postural or other limitations.  AR 1819.  The ALJ assigned this

6    opinion significant weight, noting it was based on Dr. Digamber's firsthand observations,

7    supported by those observations, and generally consistent with the medical evidence.  *Id.*  The

8    ALJ noted that Plaintiff had been diagnosed with fibromyalgia, muscle weakness, and joint pain,

9    but that physical examination findings reflected a lack of limitation, full range of motion on

10   rotation of the lower extremities, normal movement, almost no tenderness, no difficulty getting

11   on or off the examination table, negative straight leg raise testing, and normal examination of the

12   back.  *Id.  See also* AR 488-89.  Also, while the most significant records were those showing

13   complaints of fatigue and tenderness, there was no indication this would have caused Plaintiff to

14   be unable to do medium-level work.  *Id.*  The ALJ noted that Dr. Digamber was the only medical

15   source who examined Plaintiff and, therefore, provided the only opinion explaining what

16   Plaintiff was able to do despite her impairments.  *Id.*  In addition, the opinion was dated

17   December 2015, just three months prior to the DLI, and was thus a highly reliable reflection of

18   Plaintiff's work-related capabilities at the time of the DLI.  *Id.*

19        Plaintiff asserts that there is no evidence Dr. Digamber had the proper expertise to

20   address her fibromyalgia-related limitations, and cites to a website as showing Dr. Digamber is a

21   diagnostic radiologist, not a rheumatologist.  However, there is no requirement that a doctor only

22   offer a medical opinion within that doctor's particular area of expertise.  *See generally Sprague*

23   *v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Instead, under the applicable regulations, an

1    ALJ generally gives "more weight to the medical opinion of a specialist about medical issues

2    related to his or her area of specialty than to the medical opinion of a source who is not a

3    specialist." 20 C.F.R. § 404.1527(c)(5). Moreover, an ALJ may accept any medical opinion and

4    need not give reasons for doing so. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ

5    must provide reasons for rejecting a medical opinion, but not for accepting and interpreting one).

6          In this case, Dr. Digamber provided the only medical opinion associated with Plaintiff's

7    physical impairments. He also offered that opinion based on a physical examination conducted

8    close in time to the DLI. Whatever Dr. Digamber's precise area of expertise, the ALJ was

9    entitled to consider and assign significant weight to the uncontradicted opinion of this examining

10   physician.

11              *3.     Other Medical Records*

12         Plaintiff provides a lengthy description of medical records and asserts error in the failure

13   to properly consider and fully credit findings of various medical providers. Dkt. 14 at 6-8.

14   However, Plaintiff does not identify a specific assignment of error in relation to these records.

15   *See, e.g., Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required

16   to provide reasons to reject doctor's report not assessing any limitations). As such, this portion

17   of the briefing is not further addressed.

18   **C.     The ALJ Did not Err in Evaluating Plaintiff's Symptom Testimony**

19         The ALJ summarized Plaintiff's testimony and provided the following reasons for

20   discounting that testimony: (1) inconsistency between the degree of physical limitation asserted

21   and the observations of functioning and findings on examination during the relevant insured

22   period; (2) there were not many treatment records dated prior to the DLI; (3) inconsistency

23   between her testimony regarding headaches and her reporting during the relevant insured period,

1    as well as the evidence showing their effective treatment with medication; (4) inconsistency

2    between her testimony of mental health-related symptoms during the relevant insured period and

3    both her reporting and the observations of medical professionals during that same time; (5) much

4    of her testimony addressed her current symptomatology, which did not illuminate her condition

5    during the relevant insured period; and (6) inconsistency between her testimony and the evidence

6    of daily activity.  AR 1817-19.  Absent evidence of malingering, an ALJ's reasons to discount a

7    claimant's testimony must be clear and convincing.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-

8    37 (9th Cir. 2014).

9         Plaintiff argues that the ALJ fails to identify any meaningful inconsistencies justifying

10   rejection of her symptom testimony and provides only a selective summary of pre-DLI evidence,

11   none of which is inconsistent with her testimony.  She argues that the ALJ improperly rejects her

12   testimony based solely on an absence of objective support and that the analysis of fibromyalgia

13   is contrary to *Revels v. Berryhill*, 874 F.3d 648, 666-67 (9th Cir. 2017), which holds that normal

14   objective findings are consistent with debilitating fibromyalgia pain.  *See also* Social Security

15   Ruling (SSR) 12-2p (providing guidance on the evaluation of fibromyalgia).  She also argues

16   that the absence of her reports or observations of her symptoms does not mean she was not

17   experiencing those symptoms, and notes that "'it is a questionable practice to chastise one with a

18   mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Garrison v.*

19   *Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (quoted source omitted).  Plaintiff, finally,

20   denies that any of her daily activities are inconsistent with her testimony or show she could

21

22

23

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 16

perform full-time medium-level work on a sustained basis.[6]  The Court, as discussed below, finds no error.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  As such, so long as it is not the sole basis for discounting a claimant's testimony, an ALJ properly considers a lack of supportive medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  *See also* 20 C.F.R. § 404.1529(c)(4) (symptoms diminish capacity for basic work activities only to the extent alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.")  An ALJ may also discount testimony as to symptom severity based on inconsistencies with the evidence, *see Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); inconsistency with evidence of a claimant's symptom reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); evidence of minimal or conservative treatment, *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); and favorable response to treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *see also* 20 C.F.R. § 404.1529(c)(3) (treatments or other methods used to alleviate symptoms is "an important indicator of the intensity and persistence" of a claimant's symptoms).

In this case, the ALJ did not discount Plaintiff's testimony based solely on an absence of objective support.  The ALJ, as one of a number of reasons for discounting Plaintiff's testimony, considered the findings and observations of Plaintiff's functioning during the insured period and

---

[6] Plaintiff also argues that alleged errors in the consideration of the medical evidence tainted the ALJ's evaluation of her testimony and reiterates her challenge to Dr. Digamber's qualifications.  The Court, having already considered and rejected these contentions in discussing the medical evidence, declines to again address them in relation to Plaintiff's testimony.

1   found the actual limitation demonstrated or observed inconsistent with the alleged degree of

2   impairment.  *See* AR 1816-19.  Plaintiff, at best, suggests an alternative interpretation of the

3   evidence.  The ALJ's interpretation was rational and is properly upheld.

4          The ALJ also stated that, "[w]hile fibromyalgia causes limitation and pain that is not

5   readily explainable with imaging or objective findings, the limitation in actual functioning from

6   pain would be observable in functions like gait, tenderness, and range of motion[,]" and found

7   the degree of limitation asserted "inconsistent with the lack of observation of limitation."  AR

8   1817-18.  The Court also finds no error in this assessment.  First, the record in this case is

9   distinguishable from *Revels* in that it does not contain any medical opinion assessing limitations

10  associated with fibromyalgia or even evidence of an actual fibromyalgia diagnosis.  *See Revels*,

11  874 F.3d at 657-59 (treating nurse practitioner, treating physician, and physical therapist opined

12  fibromyalgia had significantly limiting effects; evidence included findings of 11 or more tender

13  points in five out of eight appointments).[7]  The record instead contains Plaintiff's report that she

14  had been diagnosed with fibromyalgia and, in a limited number of treatment records prior to the

15  DLI, her associated symptom reporting and treatment.  *See* AR 1817.  On the only occasion in

16  which a doctor offered an opinion based on an examination, Dr. Digamber found "a total of 10

17  out of 18 positive trigger points, less than would normally be required for a diagnosis of

18  fibromyalgia[,]" and noted a diagnosis of fibromyalgia "by way of history as opposed to based

19  on actual objective findings."  *Id*. (citing AR 487-89).  Second, the ALJ here identified medical

20  observations and findings specifically inconsistent with Plaintiff's testimony, such as the absence

21

22

23
_____

[7] As explained in SSR 12-2p, one of two sets of criteria satisfying a fibromyalgia diagnosis requires, *inter alia*, at least eleven out of eighteen total positive tender points on physical examination.

1   of findings of joint pain or tenderness, *see* AR 1817-18,[8] "rather than broadly finding normal

2   objective findings to be inconsistent with fibromyalgia pain, as in *Revels*." *Maureen S. v.*

3   *Comm'r of Soc. Sec.*, No. C18-1667-MLP, 2019 WL 2491915, at *2 (W.D. Wash. June 14,

4   2019).

5          The ALJ further reasonably found inconsistency between Plaintiff's testimony and the

6   evidence of her symptom reporting and her treatment during the relevant insured period.  For

7   example, prior to the DLI, Plaintiff either denied or failed to mention suicidal ideation, did not

8   report flashbacks or other PTSD symptoms, and, with respect to headaches, denied, failed to

9   report, and/or reported alleviation with NSAIDs.  AR 1818 (citing AR 485-97, 1612, 1627, 1629,

10  1634, 1735, 1779, 1605-1790).  Nor can it be said that the ALJ improperly criticized a failure to

11  pursue mental health treatment.  As discussed above, the ALJ found the evidence to show that,

12  prior to the DLI, Plaintiff's mental impairments were stable and well controlled, and that

13  Plaintiff's treatment focused on her physical impairments.  *See* AR 1811-14, 1818.

14         Plaintiff, finally, does not demonstrate error in the consideration of her daily activities.

15  An ALJ may consider daily activities as a basis for discounting symptom testimony where (1)

16  the activities contradict the claimant's testimony, or (2) the activities "meet the threshold for

17  transferable work skills[.]"  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ here

18  found Plaintiff's reports that she could clean a kitchen, do laundry, shop in stores, by phone, by

19

20         [8] As related to fibromyalgia, the ALJ described Plaintiff's allegations of limitations resulting
21  from muscle, joint, back, neck, and knee pain, weakness, tenderness, stiffness, and a problem with
    constant movement.  AR 1817.  He thereafter described the record as showing findings of normal gait and
    no evidence of muscle atrophy or asymmetry in February, August, October, and November 2012, AR
22  1817 (citing AR 1610, 1612, 1624, 1642, 1649, 1657); no evidence of tenderness and normal gait in
    March 2013, *id.* (citing AR 1671); full range of motion on rotation of lower extremities, no tenderness or
23  decreased sensation over the trochanteric area, negative straight leg raise testing, no tenderness over
    sacroiliac joints, and normal back examination in June 2013, *id.* (citing AR 1697); and, in December
    2015, Dr. Digamber's above-described findings, *id.* (citing AR 487-89).

mail, and by computer, handle money, drive a car, spend time with friends, attended church weekly, and left her home almost every day inconsistent with her testimony as to the debilitating effects of her pain.  AR 1819.  This served as an additional clear and convincing reason for discounting Plaintiff's testimony.  *See, e.g., Molina*, 674 F.3d at 1112-13 ("Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").  For this reason and for the reasons stated above, the ALJ's assessment of Plaintiff's testimony is supported by substantial evidence.

### D.    The ALJ Did Not Err in Considering Lay Witness Testimony

Under rules applicable to this case, an ALJ must provide germane reasons to discount a lay statement.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ here gave little weight to a lay statement provided by Plaintiff's spouse.  *See* AR 411-19.  The ALJ found the statement inconsistent with the medical evidence showing Plaintiff's observed capabilities and lack of limitation, and gave more weight to the opinion of the consultative medical examiner. AR 1820.  Plaintiff argues the ALJ's reasons are neither legally valid, nor germane.  However, the ALJ reasonably found the lay testimony inconsistent with the medical evidence and therefore satisfied his burden.  *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Plaintiff also asserts harmful legal error in the ALJ's failure to address a second statement from her spouse dated in January 2019, and statements from two friends dated in October 2022. *See* AR 2041, 2053-54.  The Court disagrees.  First, the lay statements from Plaintiff's friends are not reasonably construed as providing testimony as to Plaintiff's impairments and limitations prior to the March 31, 2016 DLI.  *See* AR 2053 ("I have known [Plaintiff] since 1988 when we

met in college and we remained friends, although at a distance.  In approximately, May 2017, [Plaintiff] moved to the Pacific Northwest and I have had occasion to see her much more frequently. . . . ”); AR 2054 (“[Plaintiff] seems to have good days and bad days, like all of us do. . . .  Based on the amount of time I spend with her I do not believe she is capable of maintaining a fulltime job currently. . . . “)  To the extent any of the lay testimony relates to the time period after the DLI, it does not constitute significant, probative evidence that the ALJ was required to address.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is “not required to discuss evidence that is neither significant nor probative[.]”); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need only “explain why ‘significant probative evidence has been rejected.’”) (quoted source omitted).  Second, neither the statements from Plaintiff’s friends, nor the second statement from Plaintiff’s spouse describe limitations not already described by Plaintiff.  Because the ALJ’s well-supported reasons for rejecting Plaintiff’s testimony apply equally well to this lay testimony, the ALJ’s failure to address the 2019 and 2022 lay witness statements is properly deemed harmless.  *Molina*, 674 F.3d at 1117-22.

## CONCLUSION

For the reasons set forth above, the Commissioner’s final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 18th day of March, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER’S
DECISION - 21